Rockingham,
No. 4722.

PHILLIPS EXETER ACADEMY *v.* ISABEL M. GLEASON & *a.*

Argued October 6, 1959.

Reserved case amended December 16, 1959.

Decided January 27, 1960.

370

372

*Perkins, Holland & Donovan* (*Mr. Donovan* orally), for the plaintiff.

*Burnham B. Davis* and *Upton, Sanders & Upton* (*Mr. Robert W. Upton* orally), for the defendant Isabel M. (Fish) Gleason, individually and as executrix of the will of Josephine Fish Pendergast.

*George R. Scammon* for the defendant Ralph B. Fish, furnished no brief.

*Ernest R. D'Amours,* Director of Charitable Trusts, *pro se.*

KENISON, C. J. I. Three of the questions transferred without ruling may be summarized as follows: did the Superior Court have

jurisdiction (a) to appoint and qualify the plaintiff, Phillips Exeter Academy as trustee; (b) to allow the annual accounts filed by the trustee; and (c) are the decrees of the Superior Court allowing the annual accounts of plaintiff binding on the parties? For the reasons hereafter stated the answer to each question is in the affirmative in the circumstances of this case.

The defendants contend that the Superior Court had no jurisdiction to appoint and qualify the plaintiff as trustee or to allow the annual accounts filed by it and that its action in so doing was void and without force or effect. Reliance is placed on *Rockwell* v. *Dow,* 85 N. H. 58, decided in 1931. There is no doubt that this case definitely established the exclusive jurisdiction of the probate court in the appointment and qualification of testamentary trustees and their accounting. *Lisbon Savings Bank &c. Co.* v. *Moulton's Estate,* 91 N. H. 477. However it is to be noted that in considering the present case we do not write on a slate new and clean since the plaintiff was appointed a trustee in 1917. At that time the decisions were in conflict as the *Rockwell* case itself plainly indicates from the following quotation at page 68 of the opinion: "In so far as the *earlier cases* hold that equity has concurrent jurisdiction with the probate court in the settlement of the accounts of trustees, or in the appointment or removal of trustees, they have in effect been overruled and are not to be followed." (Emphasis supplied). See also, *Barker* v. *Barker,* 73 N. H. 353 (1905); Hoyt's Probate Practice, c. xx (1901).

After notice and hearing at which all interested parties appeared by counsel and the State was represented by the Attorney General, the plaintiff was appointed and qualified as a trustee in 1917 by a decree of the Superior Court and ordered to make annual accounts to the Superior Court. No objection to the decree was made then or to the thirty-six annual accounts thereafter filed by the trustee and allowed by the Superior Court. So far as appears neither court nor counsel prophesied in 1917 the coming of *Rockwell* v. *Dow,* 85 N. H. 58, which was decided March 3, 1931 and became effective June 25 following. The proceedings taken under the decree of 1917, and the accounts filed and allowed pursuant thereto before the effective date of the *Rockwell* decision or within a reasonable time thereafter are valid and binding on the parties, unless that decision is to be given retroactive effect.

When a decision overrules earlier precedents it may be given retroactive effect but there is no constitutional requirement that

it must be. *Great Northern Ry. Co.* v. *Sunburst Co.*, 287 U. S. 358; *Opinion of the Justices*, 95 N. H. 533, 536. Particularly in probate matters where previous decisions are overruled this jurisdiction has frequently stated that the overruling decision will not be applied retroactively to the detriment of those who had previously relied on the former decisions. Thus in *Langdell* v. *Dodge*, 100 N. H. 118, 123, which overruled *Holbrook* v. *Holbrook*, 74 N. H. 201, and established a new rule relating to stock dividends, it was stated that the "opinion will not be retroactive to affect prior reliance on the *Holbrook* rule." There is a strong public policy in probate matters to see that decisions cause "no disruption of the settlement of estates." *Langdell* v. *Dodge, supra*. We conclude that the *Rockwell* case is not to be given retroactive effect as applied to the appointment and qualification of the plaintiff as trustee and to the annual accounts which were allowed before the *Rockwell* decision.

The decree of the Superior Court of 1917 remained unquestioned until the present proceedings. The 1917 decree became the law of the case and the accounts filed and allowed in reliance thereon, including the thirty-sixth annual account, are not now open to question. *Miller* v. *McCutcheon*, 117 N. J. Eq. 123; *Union Oil Co.* v. *Reconstruction Oil Co.*, 58 Cal. App. (2d) 30; anno. 95 A. L. R. 708. See *Zielinski* v. *Cornwell*, 100 N. H. 34, 39. The thirty-seventh and thirty-eighth annual accounts which are pending and have not been allowed as well as future accountings should be made to the probate court.

In view of the result reached on this issue it is unnecessary to decide whether the parties would be bound by the decrees because of laches (*Knight* v. *Hollings*, 73 N. H. 495) or on the ground of *res judicata*. Restatement, Judgments, s. 10; *Bickford* v. *Bickford*, 74 N. H. 448; *McAllister* v. *Elliot*, 83 N. H. 225, 227; *Keene* v. *Martin*, 96 N. H. 504, 506.

II. Another transferred question is whether "the defendant, Isabel M. (Fish) Gleason, in her capacity as executrix, is entitled to one-half the income which accrued prior to the death of her testatrix, Josephine Fish Pendergast, and was undistributed at her decease." Josephine Fish Pendergast died testate August 2, 1955. This accrued and undistributed fund of one-half of the income is claimed by the executrix of Josephine Fish Pendergast on the one hand and by Ralph B. Fish on the other hand. The fund represents undistributed income received or accrued for the three months'

period since the last quarterly distribution was made on May 10, 1955.

"Unless it is otherwise provided by the terms of the trust, income which accrued prior to the death of the life beneficiary is payable to his personal representatives." Restatement (Second) Trusts, s. 235A, *comment* a. It is the general rule that where a trust provides that income shall be payable at designated intervals to a life beneficiary, and the beneficiary dies between such intervals, his personal representative is entitled to the net income earned from the date of the last payment up to the time of his death. 3 Scott, Trusts (2d *ed.* 1956) s. 238; 4 Bogert, Trusts and Trustees (Part I) s. 816, *p.* 236; 1 Nossaman, Trust Administration and Taxation (2d *ed.* 1957) s. 16.03. In the absence of any contrary provision in the will, we follow the general rule in this case. See *Martin* v. *Eaton,* 57 N. H. 154, 156.

By way of example from the specific facts of this case we consider the item of interest on certain Commonwealth Edison bonds which were due and payable August 1, 1955 (which was prior to the death of the beneficiary Josephine Fish Pendergast on August 2, 1955) but was not received by the trustee until August 9, 1955. This is income to which the Pendergast estate is entitled. See also, Restatement (Second) Trusts, s. 238(1), *comment* b, illustration 1: "A bequeaths certain bonds to B in trust to pay the income to C for life in quarterly payments on the first of January, April, July and October. C dies on February 1st. His personal representatives are entitled to net income earned between January 1st and February 1st."

The transferred question is answered in the affirmative and the trustee is advised to pay to the executrix one-half the income which had accumulated but was undistributed at the decease of Josephine Fish Pendergast. A subsidiary matter relates to apportionment of the expenses of administration. If apportionment is proper the parties have agreed that the sum of $263.37 shall be charged against the undistributed income. The trustee is advised that such apportionment of expenses is proper. *Taylor* v. *Bentinck-Smith,* 304 Mass. 430; 3 Page, Wills, s. 1158, *pp.* 437, 438. See *Page* v. *D'Amours,* 99 N. H. 441, 443.

III. A further question transferred without ruling is stated as follows: "Is the $500 payable annually to Isabel M. (Fish) Gleason properly a charge on and payable from the principal or corpus of the trust estate and not from the income?" The parties

have agreed on certain material facts relating to the beneficiaries named in the residuary clause and in the second codicil in the testator's will. These facts may be conveniently summarized at this point in connection with the construction of the will and particularly the dispositive sections of the second codicil. They are as follows: "Sarah B. Brown, the testator's sister, died subsequent to the execution of the will but prior to the execution of the second codicil, as appears from the recitals therein. Mary E. Fish was the daughter of Sarah B. Brown and a niece of the testator. She was born April 25, 1858, and died January 19, 1919. Ralph B. Fish, Josephine Fish Pendergast, and Isabel Fish Gleason were her children. Ralph was born December 3, 1884, Josephine was born March 3, 1888, and Isabel was born August 10, 1899. Josephine Fish Pendergast died August 2, 1955. Ralph and Isabel survive and are parties defendants."

The material part of the second codicil reads as follows: "My Executors and Trustees are instructed to pay Isabel M. Fish five hundred dollars annually during the time they have charge of the property, and Phillips Exeter Academy, as Residuary Legatee, is to continue the payment of this sum annually during the time of her natural life." The plaintiff claims that this annuity to Isabel M. Fish Gleason is to be paid from income and the defendants claim that it should have been and should be paid from principal.

The eighteenth and residuary clause of the will expressly provided that the equal bequests of $500 to the testator's sister Sarah Brown, and the three named members of the Fish family were to be paid by the individual trustees "annually, from the income therefrom" for a period of twelve years. At the end of the twelve-year period the eighteenth clause of the will further provided that the residuary estate was to be transferred to the plaintiff, Phillips Exeter Academy, in trust to pay to the testator's sister $500 annually for life "from the income therefrom" and to pay "the balance of said income" to the named members of the Fish family and the survivor. It is quite evident that the original will contemplated that all of the income should be paid to these beneficiaries during their lives.

The death of the testator's sister and the birth of Isabel M. (Fish) Gleason undoubtedly prompted the execution of the second codicil. The codicil instructed the individual trustees to pay Isabel $500 annually for life "during the time they have charge of the property" which is for the period of twelve years. The codicil

then provided that "Phillips Exeter Academy, as Residuary Legatee, is to continue the payment of this sum annually . . . " during the beneficiary's lifetime.

The testator must have known that by his will all of the income of the trust estate after it was transferred to the Academy had been appropriated to the payment of his bequests to Mary, Josephine and Ralph Fish for their respective lives. The fact that he did not alter these provisions by the codicil but on the contrary directed that the Academy "as Residuary Legatee" should pay Isabel an annuity for her life indicates that he neither expected nor intended that her annuity should be paid by the Academy from income so long as the other life beneficiaries survived. Since during that time the only available source for payment of Isabel's annuity would be the corpus of the trust he must be deemed to have intended payment of her legacy therefrom. The question transferred is answered in the affirmative. The trustee is advised that the annuity bequeathed to Isabel should be paid from the corpus effective in the future and beginning with the period since the allowance of the thirty-sixth annual account.

IV. Whether the plaintiff is entitled to costs and attorneys' fees cannot be answered on the record before us. However, in this connection the following quotation from *Concord National Bank* v. *Haverhill*, 101 N. H. 416, 419 may be pertinent: "Accordingly, it should be emphasized that the allowance of attorneys' fees is not a matter of right but rests in the cautiously exercised discretion of the court. Attorneys' fees should be allowed only in those cases where the litigation is conducted in good faith for the primary benefit of the trust as a whole in relation to substantial and material issues essential to the proper administration of the trust. Anno. 9 A. L. R. (2d) 1132. It is recognized that in such cases the court has a duty to protect the charitable estate from vicarious generosity which might result if attorneys' fees were allowed as a matter of right. *Re Atwood's Trust*, 227 Minn. 495." The source of payment for such costs and attorneys' fees as may be allowed should be determined by the probate court. *Page* v. *D'Amours*, 99 N. H. 441, 442; RSA 564:21.

V. The remaining questions transferred have in effect been disposed of by the answers already given. As previously indicated the plaintiff had authority to maintain its petition for instructions and advice, and even if it had not the defendants would have

been entitled to have the same issues determined on their petition for declaratory judgment.

The defendants are not entitled to a full and complete accounting by the plaintiff of the income of the trust estate since it assumed the management thereof. The defendants, however, are entitled to a complete and full accounting in the probate court since the last annual account was allowed by the Superior Court.

*Remanded.*

All concurred.