Rockingham
No. 6718

HAMPTON NATIONAL BANK v. NELSON DESJARDINS

January 31, 1974

*Tetler & Holmes* (*Mr. Gary W. Holmes* orally) for the plaintiff.

*Robert R. Renfro,* by brief and orally, for the defendant.

KENISON, C.J. This case presents two questions: Whether a prejudgment attachment of a defendant's checking account by a sheriff at the request of a plaintiff without giving the defendant prior notice and an opportunity for a hearing on the validity or probable validity of the plaintiff's underlying claim, violates the due process clause of the fourteenth amendment to the Constitution of the United States, and if it does, whether the holding of unconstitutionality will be given retroactive effect.

Plaintiff began a law action to recover the balance that it claimed to be due on defendant's promissory note by delivering trustee process writs to a deputy sheriff. Trustee process in this State is denominated garnishment in many other States. The deputy sheriff, on February 3, 1972, attached the defendant's checking account without notice to the defendant and without giving him an opportunity for a hearing. Seven days later, the deputy sheriff served the writ summoning the defendant. The writ was returnable in March 1972 to the Portsmouth District Court. On February 16, 1972, the trustee disclosed under oath that it had in its possession $400 that was credited to the defendant's checking account. The case was transferred to the Rockingham County Superior Court in July 1972 on defendant's petition to remove filed under RSA 502-A:14 III. In March 1973, prior to adjudication of the merits, defendant moved to vacate

the attachment of his bank account and excepted to the denial of the motion by *Perkins,* J.

When plaintiff arranged for the deputy sheriff to attach defendant's checking account, New Hampshire practice permitted a plaintiff to obtain from clerks of district or superior courts blank original trustee process writs of attachment bearing the signature of the clerk and the seal of the court. After filling out an original writ and duplicates, a plaintiff's attorney would deliver them to a sheriff or deputy sheriff for service on the trustee and the defendant named in the writs by the attorney. The sheriff would complete the service of the duplicate writs on the trustee and the defendant as directed, make his return of completed service on the original writ, and return the original writ to the plaintiff's attorney. Plaintiff's attorney would enter the original writ in the office of the appropriate court clerk. The court would have official notice of the law action for the first time upon entry of the writ.

This practice is now obsolete. On August 15, 1973, pursuant to RSA 490:4 (Supp. 1972), this court approved the ·superior court's "Tentative Rules and Procedures to Implement New Attachment Law (RSA ch. 511-A)." RSA ch. 511-A (Supp. 1973), entitled "Pre-Judgment Attachment Procedure", was enacted on July 2, 1973, by Laws 1973, ch. 537. RSA 511-A:1-4, 7 (Supp. 1973) require a plaintiff to give to a defendant prior notice of a proposed prejudgment attachment, including attachment by trustee process, and to give a defendant an opportunity for a preliminary hearing before the attachment is made, unless there are exceptional circumstances (§ 8). Section 9 confirms the continued validity of all statutory process after an order of the court is issued under the chapter.

Plaintiff arranged for a deputy sheriff to attach the defendant's checking account by trustee process under the authority of RSA 512:9-b, which provides that banks may be named as trustees chargeable for "any goods, rights, or credits" of defendants in their hands when the writs are served. Service of the trustee process writ on the trustee in the case at bar constituted an attachment of defendant's property rights in the trustee's possession. *Edgerly v. Hale,* 71 N.H. 138, 51 A.

679 (1901). Neither RSA 512:9-b nor any other statutory provision required that the attachment of the checking account be made with prior notice to the defendant and an opportunity for a hearing, and the plaintiff gave none.

The fourteenth amendment to the Constitution of the United States declares that no State shall "deprive any person of . . . property, without due process of law." The requisites of procedural due process of law under the fourteenth amendment — notice to a person and an opportunity for him to be heard at a meaningful time and in a meaningful manner before his rights are affected — have been known and accepted for over a century. *Armstrong v. Manzo,* 380 U.S. 545 (1965); *Baldwin v. Hale,* 68 U.S. (1Wall.) 223 (1864).

The cases of *Sniadach v. Family Finance Corporation,* 395 U.S. 337 (1969), and *Fuentes v. Shevin,* 407 U.S. 67 (1972), recently enforced these requisites of procedural due process by respectively holding as unconstitutional statutory provisions permitting a prejudgment attachment of wages and a prejudgment replevin of goods without prior notice and opportunity for a hearing. *Sniadach* characterized prejudgment attachment of wages as imposing "tremendous hardship on wage earners with families to support", and held that wages were "a specialized type of property" protected by the fourteenth amendment and that depriving a person of his wages without prior notice and opportunity for hearing was unconstitutional. 395 U.S. at 340. *Fuentes* settled ambiguities of the *Sniadach* opinion by making clear that property protected by the fourteenth amendment is any property, and that notice and opportunity for a hearing on the validity or probable validity of the plaintiff's underlying claim prior to a taking is a constitutional requirement applicable to the taking of any property, not only the "necessities of life", regardless of the length of the taking and of the financial circumstances of the debtor. 407 U.S. at 88.

*Fuentes* declared that the fourteenth amendment's protection extends to "any significant property interest" (*Boddie v. Connecticut,* 401 U.S. 371, 378 (1971)), that continued possession or use of property constituted such a property interest, and that a person could be deprived of it only after notice and hearing on the validity or probable validity of the plain-

tiff's underlying claim. 407 U.S. at 86. Depriving a person of use of his property is enough, of itself, to actuate the fourteenth amendment's protection, even if the deprivation is temporary. Statutory provisions, such as RSA 512:40 and RSA 511:53, allowing a person to obtain release of his attached property upon posting a bond or to have the attachment reduced or discharged if it is found by a court to be excessive or unreasonable do not alter the fact that a person has been deprived of the use of his property before he has had notice and an opportunity for a hearing on the validity or probable validity of the plaintiff's underlying claim. *Id.* at 84-85; *Trapper Brown Constr. Co. v. Electromech, Inc.,* 358 F. Supp. 105 (D.N.H. 1973). *See generally,* Levy, *Attachment, Garnishment & Garnishment Execution: Some American Problems Considered in the Light of the English Experience,* 5 Conn. L.J. 399 (1973); Clark & Landers, *Sniadach, Fuentes and Beyond: The Creditor Meets the Constitution,* 59 Va. L. Rev. 355 (1973); Comment, 73 Colum. L. Rev. 342 (1973); Note, 53 B.U.L. Rev. 41 (1973).

*Sniadach* and *Fuentes* state that "extraordinary situations" would justify postponing notice and hearing until after an attachment or seizure has been made. *Fuentes* emphasized that the extraordinary situations must be "truly unusual", and gave as examples the protection of the public against a bank failure (*Fahey v. Mallonee,* 332 U.S. 245 (1947); *Coffin Bros. v. Bennett,* 277 U.S. 29 (1928)), the securing of state court jurisdiction (*Ownbey v. Morgan,* 256 U.S. 94 (1921)), the meeting of a national war's needs (*Central Union Trust Co. v. Garvan,* 254 U.S. 554 (1921)), the protection of the public from misbranded drugs (*Ewing v. Mytinger & Casselberry, Inc.,* 339 U.S. 594 (1950)), or from contaminated food (*North American Storage Co. v. Chicago,* 211 U.S. 306 (1908). *Fuentes,* 407 U.S. at 91 n.23, 92 nn.25-28. The Court stated that each case involved an "important governmental or general public interest", "a special need for very prompt action", and "strict control" by a government official initiating the attachment or seizure under standards of a "narrowly drawn" statute. 407 U.S. at 90-91. The case at bar does not meet any of these conditions.

We hold that a prejudgment attachment of a person's

checking account under RSA 512:9-b by a sheriff at the request of a plaintiff without giving the person prior notice and an opportunity for a hearing on the validity or probable validity of the plaintiff's underlying claim violates the due process clause of the fourteenth amendment to the Constitution of the United States. *Trapper Brown Constr. Co. v. Electromech, Inc.,* 358 F. Supp. 105 (D.N.H. 1973); *Schneider v. Margossian,* 349 F. Supp. 741 (D. Mass. 1972); *accord, Clement v. Four North State Street Corp.,* 360 F. Supp. 933 (D.N.H. 1973); *Gunter v. Merchants Warren Nat'l Bank,* 360 F. Supp. 1085 (D. Me. 1973); *cf. Lynch v. Household Finance Corp.,* 405 U.S. 538, 552 (1972).

The remaining question is whether this holding is retroactive. Under common-law theory, court opinions and decisions operated retroactively, for in saying what the law is they were saying what the law always was. *Linkletter v. Walker,* 381 U.S. 618, 622-23 (1965). Retroactive operation of a court opinion and decision did not impair contractual obligations (*Tidal Oil Co. v. Flanagan,* 263 U.S. 444 (1924)), did not violate the due process clause (*id.*), did not come under the ex post facto clause (*Frank v. Mangum,* 237 U.S. 309 (1915)), and did not violate the equal protection of the laws clause (*Sunray Oil Co. v. Commissioner,* 147 F.2d 962 (10th Cir. 1945). Although constitutional, retroactive application of a court decision is harsh on persons who have relied on the law now declared unlawful by a court decision.

Prospective application of a court opinion and decision may apply preexisting law as precedent to the case before the court and the new rule of law to other cases from the date of the decision. This prospective application would permit a substitution of a new rule of law for an old rule without harming persons who have relied on the old rule. Schaefer, *The Control of "Sunbursts": Technique of Prospective Overruling,* 42 N.Y.U.L. Rev. 631 (1967). *See generally* Comment, 71 Yale L.J. 907 (1962); Annots., 22 L. Ed. 2d 821 (1970); 14 L. Ed. 2d 992 (1966); 10 A.L.R.3d 1371 (1966). The *Sunburst* case held that State courts could constitutionally apply their opinions and decisions prospectively. *Great No. R.R. v. Sunburst Oil & Refining Co.,* 287 U.S. 358 (1932). "We think the federal consitution has no voice upon the subject. A state

in defining the limits of adherence to precedent may make a choice for itself between the principle of forward operation and that of relation backward. It may say that decisions of its highest court, though later overruled, are law none the less for intermediate transactions .... On the other hand, it may hold to the ancient dogma that the law declared by its courts had a Platonic or ideal existence before the act of declaration, in which event the discredited declaration will be viewed as if it had never been, and the reconsidered declaration as law from the beginning." *Id.* at 364-65.

The Supreme Court of New Hampshire has applied its opinions and decisions prospectively whenever it has thought justice to be better served by doing so (*e.g., Herron v. Northwood,* 111 N.H. 324, 282 A.2d 661 (1971) (budget committee's violation of right-to-know law); *Madbury v. Durham,* 108 N.H. 474, 240 A.2d 760 (1968) (allocation of foundation aid to component school districts of cooperative school district); *Rix v. Asadoorian,* 103 N.H. 330, 171 A.2d 925 (1961) (constitutional amendment on availability of trial by jury in certain cases); *Phillips Exeter Acad. v. Gleason,* 102 N.H. 369, 157 A.2d 769 (1960) (probate court's exclusive jurisdiction to appoint testamentary trustees and approve accounts)).

Relying on a long standing practice in this State, plaintiff in the case at bar began his action at law with a prejudgment trustee process attachment in February 1972. *Sniadach* was decided in June 1969; *Fuentes,* in June 1972. *Sniadach* did not clearly foreshadow *Fuentes* or the holding in the case at bar. *Sniadach* referred to wages as "a specialized type of property" whose deprivation would impose "tremendous hardship on wage earners with families to support" and would "drive a wage-earning family to the wall". See Laws 1967, 228:1 and Laws 1969, 446:1, *amending* RSA 512: 21 II for the legislature's similar concern in this State. The opinion emphasized wages as a particular type of property and emphasized the financial circumstances of the wage earner. Plaintiff's declaration in the writ says that the defendant was indebted to it in the sum of $109.91; plaintiff attached $400 in defendant's checking account. Defendant's affidavit in this case says that he paid a $500 cash deposit for a tent trailer and later "told the bank [he]

wanted to hold back on some of the payments until the defect [in the trailer] was made good", but the bank refused to accept that reason for nonpayment of the installments due under defendant's promissory note. On the record before this court plaintiff was justified in relying on precedent in this State and in thinking *Sniadach* inapplicable to a prejudgment attachment of a checking account. *See Higley Hill, Inc. v. Knight,* 360 F. Supp. 203 (D. Mass. 1973).

The Supreme Court of the United States has listed three separate factors that it considers in determining that a federal holding in a civil case will not be applied retroactively: (1) The holding establishes a new principle of law by overruling clear past precedent on which litigants relied or by deciding an issue that was not clearly foreshadowed; (2) the merits of the case, from the perspective of history of the rule in question, the purpose and effect of the rule, and the effect of its retroactive operation, requires nonretroactive application of the holding; and (3) inequitable results would ensue from retroactive application. *Chevron Oil Co. v. Huson,* 404 U.S. 97, 106 (1971).

We hold that the ruling in this case will not be applicable retroactively to the case at bar or to other civil actions now in the State courts that were begun before July 2, 1973, the effective date of RSA ch. 511-A (Supp. 1973). *See Higley Hill, Inc. v. Knight,* 360 F. Supp. 203 (D. Mass. 1973). We also hold that the ruling in this case will not be applicable retroactively to State court orders charging trustees with the amounts of defendants' credits held by them as trustees under mesne trustee process attachments made before July 2, 1973, without giving the defendants prior notice and opportunity for hearing. *See Clement v. Four North State Street Corp.,* 360 F. Supp. 933 (D.N.H. 1973); *Trapper Brown Constr. Co. v. Electromech, Inc.,* 358 F. Supp. 105 (D.N.H. 1973); *Gunter v. Merchants Warren Nat'l Bank,* 360 F. Supp. 1085 (D. Me. 1973); *cf. Lynch v. Household Fin. Corp.,* 405 U.S. 538, 552 (1972).

*Exception overruled; remanded.*

All concurred.