RICHARD P. DESCOTEAUX *& a.*

v.

LIBERTY MUTUAL INSURANCE COMPANY

May 18, 1984

*Hamblett & Kerrigan P.A.*, of Nashua (*Richard C. Gagliuso* on the brief and orally), for the plaintiffs.

*Wadleigh, Starr, Peters, Dunn & Chiesa*, of Manchester (*Jeffrey H. Karlin & a.* on the brief, and *Eugene M. Van Loan, III*, orally), for the defendant.

DOUGLAS, J.   The plaintiffs petitioned for declaratory judgment seeking a determination of the extent of insurance coverage under two separate family automobile policies issued by the defendant. The Trial Court (*Wyman*, J.) transferred the following questions of law to this court without ruling, pursuant to Supreme Court Rule 9:

"A.  Whether an 'insured' under two separate policies of automobile insurance is barred from recovering the aggregate amount of medical payments benefits available under both policies solely because they were written by the same carrier.

B.  Whether an 'insured' under two separate policies of automobile insurance is barred from recovering the aggregate amount of uninsured motorist benefits available under both policies solely because they were written by the same carrier.

C.  Whether an 'insured' under two separate policies of automobile insurance written by the same carrier is entitled to uninsured motorist coverage up to the aggregate amount of such benefits available under both policies, where each policy defines an uninsured motor vehicle to include one with liability coverage in an amount less than the applicable limits of the policy, and the insured has already recovered from the liability carrier of the negligent tortfeasor an amount equal to the uninsured motorist limits of either policy."

The facts giving rise to the case are as follows. On November 1, 1979, the plaintiff Richard A. Descoteaux was seriously injured when the car in which he was riding struck a tree. The vehicle was

driven by Kurt Ducharme and was owned by Kurt's father, Robert Ducharme. Robert Ducharme's automobile liability insurance carrier paid the policy limit of $20,000 to the plaintiffs.

At the time of the accident, Richard A. Descoteaux was insured under two separate family automobile policies issued to his parents by the defendant, Liberty Mutual Insurance Company (Liberty Mutual). One insurance policy was issued to the plaintiff Carol A. Descoteaux, and listed a 1973 Volvo as the owned automobile. A second policy, issued to the plaintiff Richard P. Descoteaux, listing a 1974 American Motors Javelin as the owned automobile, was also in effect. Each automobile policy provided uninsured motorist protection of $20,000 per person/$40,000 per occurrence and medical payments benefits with a liability limit of $1,000 per person. Each policy had a separate policy number and a separate premium charge.

The plaintiffs presented a claim to Liberty Mutual demanding payment of the full amount of both the uninsured motorist coverage and the medical payments coverage under *each* policy. Liberty Mutual denied liability under each of the policies.

The first question transferred is whether the insured is barred from stacking the medical payments benefits of two separate insurance policies issued by the same carrier. The plaintiffs argue that the stacking of medical payments benefits in the instant case is a natural extension of our holding in *Shea v. United Services Auto. Ass'n*, 120 N.H. 106, 411 A.2d 1118 (1980). The defendant argues that the narrow language of its policies precludes stacking. *Eckert v. Green Mt. Ins. Co.*, 118 N.H. 701, 394 A.2d 55 (1978).

In *Shea*, we held that an insured who was injured while a passenger in an automobile that he did not own, and that was not furnished for his regular use, could stack the medical payments coverage provided for each of three vehicles insured under a single family automobile policy. *Shea v. United Services Auto. Ass'n supra*. We reasoned that "[i]n effect, the plaintiff's father pays three separate premiums on three separate policies, each of which provides that insureds will be paid up to $5,000 in medical benefits if they are injured in a 'non-owned automobile.'" *Id.* at 108, 411 A.2d at 1119. We concluded that the insured was entitled to stack the coverage "in return for the premiums paid." *Id.*

In *Shea*, we distinguished *Eckert v. Green Mt. Ins. Co. supra*, a case in which we had expressly left open the question of stacking multiple medical payments benefits. *Shea v. United Services Auto. Ass'n, supra* at 108, 411 A.2d at 1119. In *Eckert*, we had held that the insured could not stack the medical payments coverage provided

for each of four vehicles listed in a single automobile policy. We had held that there was no multiple coverage. *Eckert v. Green Mt. Ins. Co.*, *supra* at 706, 394 A.2d at 58. The narrow language of the combination policy "linked" medical payments coverage to a specific automobile so that each listed vehicle became "the owned automobile" in a policy individually applicable to it. *Id.* at 704, 394 A.2d at 58. Because the insured was injured in one of the listed vehicles, she recovered only the medical payments benefits linked to that automobile. We noted in *Eckert* that its holding was "the result of the particular language of the policy." *Id.* at 705, 394 A.2d at 58.

■ We find no reason why the rationale in *Shea v. United Services Auto. Ass'n supra* should not apply to the case at bar. The insured was injured while occupying a non-owned vehicle. The insured's parents paid two separate premiums on two separate policies, each providing coverage of $1,000 in medical benefits if an insured is injured while occupying a non-owned vehicle. When an insured purchases coverage, he expects to be protected and to protect his family up to the amount for which he paid.

The defendant argues, however, that under *Eckert v. Green Mt. Ins. Co. supra* it can include language in its insurance policy which would preclude stacking. The defendant further asserts that it did so by including the following clause in both policies:

> "*Other Insurance:* If there is other automobile medical payments insurance against a loss covered by . . . this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declaration bears to the total applicable limit of liability of all valid and collectible automobile medical payments insurance, provided, however, the insurance with respect to a . . . non-owned automobile shall be excess insurance over any other valid and collectible automobile medical payments insurance."

■ We agree that an insurance company might preclude the stacking of medical payments coverage by including "clear and unambiguous policy language to that effect," *Shea v. United Services Auto. Ass'n, supra* at 108, 411 A.2d at 1119, and that in such a case, "[i]f we were to allow the plaintiffs to stack their coverage . . . we would be rewriting the contract for the parties." *Eckert v. Green Mt. Ins. Co.*, *supra* at 705, 394 A.2d at 58. We do not have such a case before us here.

■ The above convoluted clause does not limit the total damages of the insured to the highest of the applicable limits of any available

insurance. Thus, the portion of the clause relating to pro-rata liability can be read merely as stating that the company's proportional share of the total limit of all valid and applicable insurance may not exceed the limits of coverage. Further, by using the phrase "the insurance with respect to a . . . non-owned automobile shall be excess insurance over any other valid and collectible automobile medical payments insurance," without the use of the typical language limiting liability under the policy to the amount by which its policy limit exceeds the sum of all other insurance, the policy may be read as permitting coverage even when other valid and collectible insurance is available.

■ After a careful reading of his policies, the insured in the instant case would reasonably expect to receive medical payments under both policies. *See Town of Epping v. St. Paul Fire & Marine Ins. Co.*, 122 N.H. 248, 252, 444 A.2d 496, 498 (1982). Thus, we hold that the insured is entitled to stack the medical payments coverage of the two separate policies in return for the premiums paid, regardless of whether the premiums are paid to the same or different carriers. *See Shea v. United Services Auto. Ass'n, supra* at 108, 411 A.2d at 1119. Accordingly, the answer to the first transferred question is "no."

In the two remaining transferred questions, we are asked to determine whether the plaintiffs may stack the uninsured motorist benefits available under two separate policies issued by the same carrier for the purpose of determining whether the tortfeasor is underinsured.

Both policies at issue define an uninsured motor vehicle to include an "underinsured" vehicle. The definitions read:

> "'Underinsured motor vehicle' means a motor vehicle with respect to the ownership, maintenance, or use of which the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident *is less than the applicable limits of liability under this insurance.*"

(Emphasis added.)

The plaintiffs seek to stack the coverage purchased under both Liberty Mutual policies for the purpose of determining whether the tortfeasor is underinsured. In other words, they contend that they have $40,000 in uninsured motorist coverage, compared to the tortfeasor's $20,000 of liability coverage, and that the tortfeasor is therefore underinsured. They argue that the language of the policy definitions which precludes such stacking, by requiring that the

determination whether a tortfeasor is underinsured be made by considering each policy separately, is no longer valid and effective in light of our holding in *Courtemanche v. Lumbermens Mutual Casualty Co.*, 118 N.H. 168, 385 A.2d 105 (1978), in which we permitted stacking.

The defendant carrier argues that under *Grimes v. Concord General Mutual Ins. Co.*, 120 N.H. 718, 422 A.2d 1312 (1980), the policy language is "sufficiently clear" that underinsured coverage is determined by looking to each policy separately. The defendant thus maintains that, since the plaintiffs did not purchase coverage in excess of the statutory minimum and the insured was not injured by an uninsured motorist, they may not recover under either policy. *Brack v. Middlesex Mut. Ins. Co.*, 118 N.H. 72, 382 A.2d 914 (1978).

In *Carrignan v. Allstate Ins. Co.*, 108 N.H. 131, 229 A.2d 179 (1967), we held that "an automobile which is not insured for bodily injury liability in the minimum limits established by our legislature is an uninsured automobile to the extent to which its insurance coverage falls short of the statutory limits." *Id.* at 133–34, 229 A.2d at 180–81. The legislature agreed and amended the uninsured motorist statute to include underinsured motorist coverage. Laws 1969, 485:2, codified at RSA 268:15-a, V (current version recodified at RSA 259:117).

■ The legislature also amended the statute to allow an insured to purchase uninsured motorist coverage up to the limits of his liability coverage. Laws 1969, 418:1, codified at RSA 268:15-a, I (current version as amended recodified at RSA 264:15, I). By the 1969 amendment, the legislature intended to permit the insured to recover the amount that he would have been entitled to had the tortfeasor been insured to the same extent as the insured.

■ After that amendment, our inquiry in determining the extent of coverage to which an insured was entitled under the uninsured motorist statute necessarily no longer focused exclusively on whether the tortfeasor was insured in the minimum amount required by New Hampshire law. Rather, we determined the extent of coverage by ascertaining the amount of uninsured motorist coverage the insured had *purchased. See, e.g., Courtemanche v. Lumbermens Mut. Cas. Co.*, 118 N.H. 168, 385 A.2d 105 (1978); *Vigneault v. Travelers Ins. Co.*, 118 N.H. 75, 382 A.2d 910 (1978). The purpose of the legislature in amending the uninsured motorist statute required us to find that the statute allowed an insured to recover to the extent that he had purchased uninsured motorist coverage exceeding the tortfeasor's liability insurance coverage. *Id.*

■ The stacking of uninsured motorist benefits is well established in New Hampshire. Where the tortfeasor is uninsured, an insured is permitted "to stack the coverages of as many uninsured motorist policies as are applicable to him." *Courtemanche v. Lumbermens Mut. Cas. Co.*, 118 N.H. 168, 173, 385 A.2d 105, 108 (1978).

If we were to give effect to the policy's definitions in this case, we would create an anomaly under New Hampshire law. An insured who is covered by more than one uninsured motorist endorsement is permitted to stack the coverage under each policy and recover the total coverage purchased, if a tortfeasor has *no* insurance. *Id.* Yet, the same insured would not recover under his own policies to the extent of the total coverage purchased if a tortfeasor had liability insurance which satisfied the statutory minimum but which was less than the total amount of uninsured motorist coverage the insured had purchased. We do not believe that the legislature could have intended such an absurd result.

■ Therefore, we find that "[w]hen an insured purchases additional coverage, he reasonably expects to be protected against uninsured motorists up to the amount for which he paid. Since the legislature created an option for additional coverage, it intended that those choosing to buy increased protection should receive its benefits." *Vigneault v. Travelers Ins. Co.*, 118 N.H. 75, 80, 382 A.2d 910, 914 (1978). "The fact that additional coverage is provided by more than one policy, rather than through increased liability limits, should not undermine that legislative decision." *Courtemanche v. Lumbermens Mut. Cas. Co.*, 118 N.H. 168, 172, 385 A.2d 105, 107 (1978).

■ In this case, the plaintiffs paid two separate premiums on two separate policies, providing a total of $40,000 in uninsured motorist coverage. Accordingly, to give effect to the legislature's intention that the insured recover the amount that he would have been entitled to had the tortfeasor been insured to the same extent as he, we conclude that the policy language is invalid and that the plaintiffs may stack the coverage of each uninsured motorist endorsement to determine the amount of coverage purchased. "[T]he insured [then] will receive the difference between the amount of his damages or the coverage, whichever is the lesser, and the tortfeasor's liability coverage. . . ." *Vigneault v. Travelers Ins. Co.*, 118 N.H. 75, 79, 382 A.2d 910, 913 (1978). The answer to the second transferred question is "no," and the answer to the third transferred question is "yes."

*Remanded.*

46

SOUTER, J., did not sit; BROCK, J., dissented; the others concurred.

BROCK, J., dissenting: In my view, the language used by the insurance carrier in its "Other Insurance" clause to preclude stacking of medical payments coverages in the circumstances of this case is clear, unambiguous, and not convoluted. By merely describing the clause as "convoluted," the majority denies the insurance carrier a right which the majority acknowledges it has under *Eckert v. Green Mt. Ins. Co. supra,* and in effect rewrites the contract for the parties. I respectfully dissent.