Hillsborough
No. 85-381

NICHOLAS CACAVAS

v.

MAINE BONDING AND CASUALTY COMPANY

June 5, 1986

*James S. Yakovakis P.A.*, of Manchester (*Brian T. McDonough* on the brief, and *Mr. Yakovakis* orally), for the plaintiff.

*Sheehan, Phinney, Bass & Green P.A.*, of Manchester (*James Q. Shirley* and *Daniel P. Schwarz* on the brief, and *Mr. Schwarz* orally), for the defendant.

JOHNSON, J.   In this appeal from the Trial Court's (*Dalianis*, J.) granting of the defendant's motion to dismiss, the plaintiff asserts that he is entitled to "stack" the uninsured motorist benefits for two vehicles that are insured by the defendant under a single policy. We agree, and accordingly reverse and remand.

In March 1982, the plaintiff and several other pedestrians were injured in an automobile accident in Manchester when they were struck by a motorist who had left the roadway and traveled down the sidewalk. The plaintiff was seriously injured and claimed $200,000 in damages. The aggregate total liability insurance limits for the two drivers involved was $140,000, of which the plaintiff received $55,000 as his share of the settlement by all three of the injured parties.

At the time of the accident, the plaintiff and his wife owned two cars that were both insured by the defendant under one policy, with uninsured motorist coverage in the amount of $100,000 for "each person" and $300,000 for "each accident." The plaintiff made a demand against the defendant to recover an additional $145,000, claiming that he was entitled to stack the $100,000 uninsured motorist coverage provided for each of the vehicles insured under the policy, and was therefore entitled to $200,000 less the $55,000 settlement received from the drivers involved in the accident. The defendant refused payment of $145,000, and offered the plaintiff $45,000, alleging that the plaintiff was not entitled to "stack" the two uninsured motorist coverages provided for by the policy. The plaintiff filed a petition for declaratory judgment, RSA 491:22, and the defendant moved to dismiss. The superior court granted the defendant's motion, ruling that *Grimes v. Concord General Mutual Insurance Co.*, 120 N.H. 718, 422 A.2d 1312 (1980), governed the action.

"Intra-policy stacking" allows "the insured to aggregate the limits of coverage by multiplying the stated limit of liability by the number of vehicles covered under a policy." Comment, *Intra-Policy Stacking of Uninsured Motorist and Medical Payments Coverages: To Be or Not to Be*, 22 S.D.L. REV. 349, 350 (1977). In *Grimes*, we addressed the issue of intra-policy stacking and held that a plaintiff is not entitled "to stack the uninsured motorist benefits contained within a single policy that insures two cars, one of which the plaintiff was operating when the accident occurred." 120 N.H. at 720, 724, 422 A.2d at 1313, 1316.

Although this case is factually distinguishable from *Grimes* in that it does not involve a plaintiff who was driving an insured vehicle when injured, we do not believe that this distinction is of any

legal significance. In *Shea v. United Services Automobile Association*, 120 N.H. 106, 108, 411 A.2d 1118, 1119 (1980), we held that an insured may stack *medical payment benefits* under a single policy while occupying a "non-owned automobile," although stacking is prohibited if the plaintiff is injured while occupying an "owned vehicle," *Eckert v. Green Mountain Insurance Co.*, 118 N.H. 701, 704–05, 394 A.2d 55, 57–58 (1978). We decline to recognize this distinction here, however, because uninsured motorist coverage is not dependent upon whether the insured is occupying a vehicle covered by the policy. *See Federated American Ins. Co. v. Raynes*, 88 Wash. 2d 439, 448, 563 P.2d 815, 820 (1977). Uninsured motorist coverage is not linked to a particular vehicle, and the fortuitousness of the plaintiff's injury occurring while in an owned vehicle should not determine the amount of uninsured motorist coverage received.

In *Descoteaux v. Liberty Mutual Insurance Co.*, 125 N.H. 38, 480 A.2d 14 (1984), this court held that a plaintiff was permitted to stack uninsured motorist benefits contained within two separate policies written by the same carrier, for the purpose of determining the amount of coverage purchased. *Id.* at 45, 480 A.2d at 19. No distinction was drawn between a plaintiff injured while occupying an insured vehicle and a plaintiff otherwise injured. *Id.; see also Hartford Ins. Co. v. White*, 125 N.H. 767, 770, 484 A.2d 1222, 1224 (1984). We stated in *Descoteaux that* "[w]hen an insured purchases additional coverage, he reasonably expects to be protected against uninsured motorists up to the amount for which he paid premiums. Since the legislature created an option for additional coverage, it intended that those choosing to buy increased protection should receive its benefits." 125 N.H. at 45, 480 A.2d at 19 (quoting *Vigneault v. Travelers Ins. Co.*, 118 N.H. 75, 80, 382 A.2d 910, 914 (1978)). To give effect to this legislative intent, we concluded that the policy language precluding stacking was invalid. *Descoteaux, supra* at 45, 480 A.2d at 19.

In *Grimes*, we held that the fact that the plaintiff had paid two premiums to the insurance carrier did not require the stacking of benefits; the plaintiff received a benefit for that extra premium because the use of two cars exposed the insurance carrier to the greater risk of an accident. 120 N.H. at 721, 422 A.2d at 1315. This rationale is seriously weakened by our holding in *Descoteaux*, in that the insurance carrier's risk is no greater under a single policy covering two vehicles than under two separate policies for the same two vehicles. In this case, the plaintiff paid the same two premiums for a single policy, less a 15% discount that covers administrative costs, and he asserts that he reasonably expected combined coverage. *See Taft v. Cerwonka*, 433 A.2d 215 (R.I. 1981). We do not believe that

this case requires a different result than that reached in *Descoteaux* merely because the plaintiff's two cars are insured under a single policy. In either case, it would be impossible for the insurance company to link limited coverage to a particular vehicle in compensating the plaintiff.

⬛ Additionally, we note that the payment of double premiums is merely a factor to be considered in the application of the "reasonable expectations of the insured" doctrine. *Grimes*, 120 N.H. at 722, 422 A.2d at 1315. "The general rule is that the court will honor the reasonable expectations of the policyholder," *Andrews v. Nationwide Mutual Insurance Co.*, 124 N.H. 148, 153, 467 A.2d 254, 258 (1983) in determining the amount of coverage. An insurance company may limit its coverage through "clear and unambiguous policy language." *Id.* at 154, 467 A.2d at 258. In *Grimes*, we held that language prohibiting stacking of benefits, similar to the language contained in the plaintiff's policy, was "sufficiently clear that the 'ordinarily intelligent insured' after a 'more than casual reading' would understand it to limit the carrier's liability . . . ." 120 N.H. at 722–23, 422 A.2d at 1315. The standard that we used to determine the reasonable expectations of the insured in *Grimes*, however, has been changed. In *Trombly v. Blue Cross/Blue Shield*, 120 N.H. 764, 423 A.2d 980 (1980), we stated that the standard for interpreting insurance contracts relied on "the assumption that the reasonable insured both reads the policy and comes to some understanding of its terms. In view of the prolixity of the language found in many insurance policies, this assumption is unfounded." *Id.* at 770, 423 A.2d at 984. We thus adopted the rule of strict construction, holding that "an ambiguous insurance policy will be construed in favor of the insured and against the insurer." *Id.* at 771, 423 A.2d at 985.

⬛ The policy issued to the plaintiff in the present case is ambiguous in that it contains the standard "Limits of Liability" clause, which is incorporated in insurance policies whether the policy covers one or several vehicles. *See Sellers v. Government Employees Insurance Co.*, 214 So. 2d 879 (Fla. Dist. Ct. App. 1968). The plaintiff could reasonably interpret the policy to mean that liability was not limited to the amount declared for only one vehicle but, rather, applied as if two policies existed. *See id.* at 880. In view of the ambiguity, we will read the policy against the insurer in order to honor the reasonable expectations of the policyholder. The insurance company simply chose to provide a single policy to the insured, who was not informed that a single insurance policy covering two vehicles, as opposed to two policies covering the same two vehicles, would result in lessened coverage.

■ The insurance company remains free to limit its liability through "clear and unambiguous policy language." Given the strict standard for interpreting insurance contracts established by *Trombly*, the policy language must be so clear as to create no ambiguity which might affect the insured's reasonable expectations. As we held in *Descoteaux*, 125 N.H. at 45, 480 A.2d at 19, an insured who purchases increased coverage reasonably expects to be additionally protected against uninsured motorists.

*Reversed and remanded.*

SOUTER, J., concurred specially; BROCK, J., dissented; the others concurred.

SOUTER, J., concurring specially: I believe that *Grimes v. Concord Gen'l Mut. Ins. Co.*, 120 N.H. 718, 422 A.2d 1312 (1980) was correctly decided and that *Descoteaux v. Liberty Mut. Ins. Co.*, 125 N.H. 38, 480 A.2d 14 (1984) was decided wrongly. If I had sat on *Descoteaux* I would have joined Justice Brock's dissent in that case, and were it not for the majority opinion in *Descoteaux* I would join Justice Brock in his dissent today. I concur with the majority, however, because I believe that *Descoteaux* effectively overruled *Grimes* and that *stare decisis* calls for me to follow *Descoteaux*.

In *Descoteaux* this court reasoned that an other-insurance clause that did not expressly bar stacking could be read merely to limit the insurer's proportional share of coverage by reference to the limits of liability stated in the policy. Apparently on the assumption that the other-insurance clause was thus equivalent to a limits-of-liability clause, the court held that the legislative policy of the 1969 amendments to the statute regulating uninsured motorist coverage required an interpretation of the policy that would permit stacking. If I understand the court's reasoning, it follows that in the absence of fairly specific language to bar stacking, a limits-of-liability clause does not bar it and stacking must be permitted.

Since *Grimes* had rested on a limits-of-liability clause in holding that stacking was not permitted, it is difficult to find any vitality in *Grimes* after *Descoteaux*. It is true, of course, that *Grimes* involved one policy insuring two cars, while *Descoteaux* involved two policies. But I am unable to see any principled distinction that would confine *Descoteaux's* emphasis on the significance of legislative intent to the two-policy case. It is also true that *Grimes* involved minimum uninsured motorist coverage, while the *Descoteaux* policy contained higher limits, but *Descoteaux* itself rejected any distinction on that basis. I therefore conclude that *Descoteaux* effectively overruled *Grimes*, and that respect for the more recent precedent counsels us

to hold that the limits of liability clause in question here must be construed to permit intra-policy stacking of uninsured motorist coverages.

Today's decision at least has the merit of achieving a certain rough consistency of results in the uninsured motorist cases, as between interpretations of other-insurance and limits-of-liability clauses, and as between one-policy and two-policy coverages. This consistency is arguably cause for some surprise, however, in view of the arduous course that the court has followed to reach it, a course that reflects, *inter alia*, our necessarily piecemeal process of individual policy interpretation. Since that process has not seen its last stacking case, it is fair to ask whether there is a better way to resolve the potential disputes that remain. I, for one, hope that the legislature or the insurance commissioner will give thought to a fresh and systematic look at the issue of stacking.

BROCK, J., dissenting: A determination as to whether an insured is entitled to stack uninsured motorist benefits is not dictated by the number of policies involved, but rather by the contract between the parties. *See Grimes v. Concord General Mutual Insurance Co.*, 120 N.H. 718, 722–23, 422 A.2d 1312, 1315 (1980); *Eckert v. Green Mountain Insurance Co.*, 118 N.H. 701, 705, 394 A.2d 55, 58 (1978). Absent legislation providing otherwise, a provision in an insurance policy clearly and unambiguously prohibiting intra-policy stacking of uninsured motorist benefits should be given effect by this court. *Grimes supra; see also Andrews v. Nationwide Mutual Insurance Co.*, 124 N.H. 148, 154, 467 A.2d 254, 258 (1983) (insurance company may limit coverage by "clear and unambiguous policy language"). In *Grimes*, this court found the language in the policy limiting uninsured motorist benefits to be clear and unambiguous. *Grimes, supra* at 722–23, 422 A.2d 1315. The policy language in the present case is almost identical to that found in *Grimes*. Applying the logic of *Grimes* and foregoing the temptation to legislate where the legislature has not, I would hold that the language in the insurance contract between the plaintiff and Maine Bonding and Casualty Company effectively precludes the plaintiff from stacking his uninsured motorist benefits under the facts of this case. Thus, I respectfully dissent.