LEIGH ANN MAHER *vs.* JOHN G. CHASE & others[1]; HARTFORD ACCIDENT & INDEMNITY COMPANY, intervener.

No. 99-P-456.

Middlesex. March 15, 2001. - June 28, 2001.

Present: JACOBS, GILLERMAN, & CYPHER, JJ.

*Contract,* Insurance. *Insurance,* Coverage, Motor vehicle insurance, Construction of policy. *Motor Vehicle,* Insurance.

This court concluded that New Hampshire law does not permit the "stacking" of bodily injury coverage contained in a policy of motor vehicle insurance: therefore, a plaintiff who sustained personal injuries while a passenger in one of three automobiles covered by an insurer under a single New Hampshire family policy, was entitled to recover not more than the single limit of $100,000 of bodily injury coverage stated in the policy. [24-27]

CIVIL ACTION commenced in the Superior Court Department on August 27, 1992.

The case was heard by *Christine M. McEvoy,* J., on a motion for summary judgment.

*Edward R. Dean, Jr.,* for the plaintiff.

*Laura Meyer Gregory* for the intervener.

CYPHER, J. Leigh Ann Maher was a passenger in an automobile driven by John Chase when he crashed into a tree in Massachusetts. Maher sustained serious injury and permanent disability. Chase, a resident of New Hampshire, was driving an automobile owned by his parents, also residents of New Hampshire. The automobile was insured under a "New Hampshire Family Policy" (policy) and registered in New Hampshire. The parties agree that New Hampshire law controls the interpretation of the policy. *Kahn* v. *Royal Ins. Co.,* 429 Mass. 572, 575 (1999). *Avemco Ins. Co.* v. *Aerotech, Ltd.,* 677 F. Supp. 35, 37-38 (D. Mass. 1987).

---

[1]Jacqueline R. Chase and the Knights of Columbus Building Associates.

Maher filed suit against Chase and others, seeking to "stack" the bodily injury coverage of the two other automobiles owned by the Chase family with the coverage of the automobile involved in the accident.[2] Hartford Accident and Indemnity Company (Hartford) then moved to intervene, Mass.R.Civ.P. 24(a)(2), 365 Mass. 769 (1974), seeking a declaration of rights with regard to the policy and moved for summary judgment. After a hearing, a Superior Court judge granted the motion and Maher appealed. We conclude that stacking bodily injury liability coverage was not permitted by the Chase family policy.[3]

1. *New Hampshire law.* Interpretation of language in an insurance policy presents a question of law for the court. *Curtis* v. *Guaranty Trust Life Ins. Co.*, 132 N.H. 337, 340 (1989). Unambiguous language is given its natural and ordinary meaning. *Coakley* v. *Maine Bonding & Cas. Co.*, 136 N.H. 402, 410 (1992). Where there is ambiguity, the language is construed in favor of the insured. *Ibid.* New Hampshire honors the reasonable expectations of the insured. *Trombly* v. *Blue Cross/Blue Shield*, 120 N.H. 764, 771 (1980).

There are no statutes and no reported decisions in New Hampshire addressing the stacking of bodily injury liability coverage. The New Hampshire Supreme Court has stated, with respect to uninsured or underinsured motorist (UM/UIM) cover-

---

[2]In this context, stacking refers to "the phenomenon of insureds or claimants against them adding all available [coverages contained in a single policy] together to create a greater pool in order to satisfy their actual loss." 12 Couch, Insurance § 169:4 (3d ed. 1998).

[3]Under the terms of the insurance policy issued to the Chase family, the insurance company agreed to pay "on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of . . . bodily injury, sickness or disease, including death resulting therefrom, hereinafter called 'bodily injury,' sustained by any person."

The declaration page which listed the three Chase family automobiles stated: "With respect to each automobile to which coverage applies, the insurance afforded is only with respect to such and so many of the coverages as are indicated by specific premium charge or charges. With respect to each such automobile, the limits of the company's liability against each such coverage shall be as stated herein, subject to all the terms of this policy having reference thereto." The limits were shown as $100,000 for each injured person and $300,000 for each occurrence. If Maher were permitted to stack the policies, she could collect the $100,000 bodily injury liability coverage for each vehicle, for a total of $300,000.

age, that intra-policy stacking is permitted unless the insurance company has limited its liability for stacking through clear and unambiguous language in the policy.[4] *Cacavas* v. *Maine Bonding & Cas. Co.*, 128 N.H. 204, 208 (1986). *Green Mountain Ins. Co.* v. *Bonney*, 131 N.H. 762, 768 (1989). *United Servs. Auto. Assn.* v. *Wilkinson*, 132 N.H. 439, 443-446 (1989). Maher claims that, because no such limitation of liability was included with regard to bodily injury liability coverage, New Hampshire law would permit stacking.

2. *Stacking bodily injury liability coverage.* Although no case in New Hampshire specifically prohibits the stacking of bodily injury liability coverage, our review of New Hampshire case law reveals that the principle of stacking has been applied only to UM/UIM or medical payment coverage. *Shea* v. *United Servs. Auto. Assn.*, 120 N.H. 106, 108 (1980). *Cacavas* v. *Maine Bonding & Cas. Co*, 128 N.H. at 205, 207-208. See *Green Mountain Ins. Co.* v. *Bonney*, 131 N.H. at 768; *United Servs. Auto. Assn.* v. *Wilkinson*, 132 N.H. at 443; *Concord Gen. Mut. Ins. Co.* v. *Mitchell*, 138 N.H. 229, 231-233 (1994). The reason courts have limited stacking to UI/UIM and medical payment coverage lies in the nature of the coverage.[5]

The Supreme Court of New Hampshire has noted that UM/UIM was a legislative innovation designed to protect the public which has been interpreted liberally. *Hein* v. *Nationwide Mut. Ins. Co.*, 106 N.H. 378, 381 (1965). See N.H. Rev. Stat. Ann. § 264.15 (1999 & Supp. 2000) (current codification of the

---

[4]Intra-policy stacking refers to stacking coverages for multiple vehicles insured under one policy. Inter-policy stacking refers to stacking coverage for multiple vehicles insured under separate policies, but by the same insured.

[5]An apparent majority of jurisdictions that have considered this issue have concluded that bodily injury liability coverage is not subject to stacking. *Government Employees Ins. Co.* v. *Lally*, 327 F.2d 568, 571 (4th Cir. 1964) (applying Maryland law). *Emick* v. *Dairyland Ins. Co.*, 519 F.2d 1317, 1327 (4th Cir. 1975) (interpreting Virginia law). *Basso* v. *Allstate Ins. Co.*, 19 Ariz. App. 58, 60 (1973). *Maine* v. *Hyde*, 350 So. 2d 1161, 1162-1163 (Fla. App. 1977). *Cook* v. *Suburban Cas. Co.*, 54 Ill. App. 2d 190, 196 (1964). *DeMaria* v. *Auto Club Ins. Assn.*, 165 Mich. App. 251, 255 (1987). *Polland* v. *Allstate Ins. Co.*, 266 N.Y.S.2d 286, 287 (1966). *Nationwide Mut. Ins. Co.* v. *Bair*, 257 S.C. 551, 555 (1972). *American Liberty Ins. Co.* v. *Ranzau*, 481 S.W.2d 793, 797-798 (Tex. App. 1972). *Pacific Indem. Co.* v. *Thompson*, 56 Wash. 2d 715, 716 (1960). *Rosar* v. *General Ins. Co. of America*, 41 Wis. 2d 95, 100-101 (1968).

statute cited in *Hein*). UM/UIM and medical payment coverages provide direct benefits to the insured, not to third parties, and are provided pursuant to a contract with the insured. *Kirouac* v. *Healey*, 104 N.H. 157, 160 (1962). *Hein* v. *Nationwide Mut. Ins. Co.*, *supra*. Bodily injury coverage is liability insurance that protects the policy holder from liability to others and obligates the insurance company to pay third parties on behalf of the insured. Some courts have reasoned that bodily injury liability coverage "follows the vehicle."[6] See generally 12 Couch, Insurance § 169:109 & n.64, at 198-199 (3d ed. 1998), and cases cited. Compare *Cacavas* v. *Maine Bonding & Cas. Co.*, 128 N.H. at 206 ("[u]ninsured motorist coverage is not linked to a particular vehicle").

UM/UIM coverage may be stacked in the absence of clear anti-stacking language because the insured reasonably expects protection against the uninsured or underinsured motorist, to the amount for which the insured paid premiums. *Ibid*. This rationale does not apply to injured third parties. Maher did not purchase the policy and was not a party to the contract. She, therefore, could have no expectation of benefit in the policy.[7]

3. *Ambiguity in the policy*. Maher further argues that the presence of anti-stacking language in the endorsement with regard to UI/UIM and medical payment coverage, coupled with the absence of anti-stacking language in the endorsement with regard to bodily injury liability coverage, created an ambiguity.[8] Policy terms are ambiguous "only when the parties may reason-

---

[6]Modern authority suggests that this approach is outmoded as automobile liability insurance also "follows the person" when a named insured is covered for use of "other" or "non-owned" vehicles, such as rental vehicles. 12 Couch, Insurance § 169:109, at 199 (3d ed. 1998).

[7]Chase makes no claim against Hartford concerning what, if any, expectation he had with regard to the stacking of bodily injury liability coverage and whether Maher should benefit from that expectation. We note that the premiums for the bodily injury coverage were separately set forth and appear to have considered the different levels of risk presented by each automobile and primary driver.

[8]The policy stated with regard to uninsured motorists that "[t]he limit of liability for uninsured motorists coverage stated in the declarations as applicable to 'each person' is the limit of the company's liability for all damages, including damages for care or loss of services, because of bodily injury sustained by one person as a result of any one accident and, subject to the above provision respecting each person, the limit of liability stated in the

ably differ about their interpretation." *Holey* v. *Allstate Ins. Co.*, 129 N.H. 512, 514 (1987) (citation omitted). The language limiting bodily injury liability coverage was clear. The declarations page expressly stated the per person and per accident limits and the bodily injury liability coverage provision clearly stated that it limited the bodily injury coverage to the per person and per accident limits in the declaration. Only one of the three automobiles covered in the Chase policy was involved in the accident; therefore, only $100,000 of bodily injury coverage is available to Maher.

4. *The separability clause.* Maher claims the language in the "limit of liability" clause in the Chase policy is identical to language found to be ambiguous by the New Hampshire Supreme Court in *Cacavas*, and when coupled with the separability clause,[9] created an ambiguity which should be resolved against Hartford to permit intra-policy stacking of bodily injury coverage. *Cacavas* v. *Maine Bonding & Cas. Co.*, 128 N.H. at 207. Again, Maher relies solely on cases addressing UI/UIM or medical payment coverage.[10]

A significant number of jurisdictions have found that separability clauses similar to the one in the Chase policy created no ambiguity when interpreted with regard to bodily injury liability coverage and merely rendered the policy applicable to whichever of the insured cars was involved in the accident.[11] *Greer* v. *Associated Indem. Corp.*, 371 F.2d 29, 32-33 (5th Cir. 1967). *Allstate Ins. Co.* v. *Mole*, 414 F.2d 204, 205 (5th Cir.

declarations as applicable to 'each accident' is the total limit of the company's liability for all damages, including claims for care or loss of services, because of bodily injury sustained by two or more persons as the result of any one accident. This is the most we will pay regardless of the number of: 1) insureds; 2) claims made on account of bodily injury; 3) automobiles or premiums shown in the Declarations; or 4) automobiles involved in the accident."

[9]The Chase family policy contained the typical separability clause: "When two or more automobiles are insured hereunder, the terms of this policy shall apply separately to each . . . ."

[10]See *Virginia Farm Bureau Mut. Ins. Co.* v. *Wolfe*, 212 Va. 162, 163-164 (1971) (limitation of liability and separability clauses were susceptible of conflicting constructions with regard to medical payment provision).

[11]Some courts have found, in the context of UM/UIM or medical payment coverage, that the limits of liability and separability provisions did not permit intra-policy stacking. *Jones* v. *Allstate Ins. Co.*, 429 So. 2d 241, 244 (La. App.

1969). *Basso* v. *Allstate Ins. Co.*, 19 Ariz. App. 58, 60 (1973). *Maine* v. *Hyde*, 350 So. 2d 1161, 1162-1163 (Fla. App. 1977). *Allstate Ins. Co.* v. *Zellars*, 462 S.W.2d 550, 554 (Tex. 1970). *Pacific Indem. Co.* v. *Thompson*, 56 Wash. 2d 715, 716 (1960). *Rosar* v. *General Ins. Co. of America*, 163 N.W.2d 129, 131 (Wis. 1968). We do not think that *Cacavas* or *Concord* suggest that the New Hampshire courts would conclude otherwise. See *Cacavas* v. *Maine Bonding & Cas. Co.*, 128 N.H. at 206-208; *Concord Gen. Mut. Ins. Co.* v. *Mitchell*, 138 N.H. at 231-233.

5. *Conclusion.* New Hampshire case law permitting stacking applies only to UM/UIM or medical payment coverage. The Chase Family Policy limits liability with regard to bodily injury coverage to $100,000 per person.

*Judgment affirmed.*

1983). *American Liberty Ins. Co.* v. *Ranzau*, 481 S.W.2d 793, 797-798 (Tex. App. 1972). *Nationwide Mut. Ins. Co.* v. *Bair*, 257 S.C. 551, 555 (1972).