Merrimack
No. 92-148

CONCORD GENERAL MUTUAL INSURANCE COMPANY

v.

CARL MITCHELL, ADMINISTRATOR OF THE ESTATE OF
STEPHAN G. MITCHELL, & a.

February 4, 1994

*Wiggin & Nourie*, of Manchester (*Doreen F. Connor* on the brief and orally), for the plaintiff.

*Kalled Law Offices*, of Ossipee (*John Pierce Kalled* and *Douglas P. Hendrickx* on the brief, and *Mr. Kalled* orally), for the defendants.

HORTON, J. Carl and Jeanne Mitchell, defendants in the declaratory judgment action below, appeal from an order of the Superior Court (*Flynn*, J.). On appeal, the Mitchells argue that the trial court erred in holding that they could not "stack" underinsured motorist coverage under an automobile policy issued to them by the plaintiff, Concord General Mutual Insurance Company (Concord General). Further, they argue that the trial court erred in allowing Concord General to "offset" its underinsured motorist coverage with all monies paid by the tortfeasor's insurance company. We affirm.

On July 27, 1989, the Mitchells' son, Stephan, was killed in a single-vehicle automobile accident while a passenger in a vehicle driven by Brian Bennett, who was also killed. At the time of the accident, Bennett was insured under a policy issued by Peerless Insurance Company with an applicable liability limit of $100,000. The Mitchells made a demand on Peerless and, with the approval of Concord General, settled their claim against Bennett's estate for the $100,000 policy limit. Distribution of these funds was approved by the Carroll County Probate Court. After deducting funeral expenses and attorney's fees, the probate court approved a distribution of two-thirds of the remaining $57,644.73 to Stephan's estate and, noting that the Mitchells also had filed claims in their individual capacities, a distribution of one-third to the Mitchells directly.

The Mitchells also made a demand on Concord General for underinsured motorist coverage. At the time of the accident, the Mitchells had four automobiles insured with Concord General under a single policy. Each automobile had underinsured motorist liability limits of $100,000 per person and $300,000 per occurrence. Concord General filed a petition for declaratory judgment arguing that the Mitchells could not "stack" the underinsured motorist liability limits, and that it was entitled to "credit" the $100,000 Peerless liability limits against its own underinsured coverage. Ruling on cross summary judgment motions, the trial court held that the Concord General policy precluded stacking and thus provided only $100,000 of underinsured coverage. The court further held that Concord General was entitled to offset its $100,000 of coverage with the full $100,000 paid by Peerless, leaving the Mitchells with no claim against Concord General.

On appeal, the Mitchells argue that the policy should be construed (1) to permit intra-policy stacking of underinsured motorist benefits,

and (2) to allow as an "offset" only that portion of the Peerless funds which were actually distributed to Stephan's estate as compensation for bodily injury. We disagree.

 The interpretation of insurance policy language is ultimately a question of law for this court to decide. *Raudonis v. Ins. Co. of North America*, 137 N.H. 57, 59, 623 A.2d 746, 747 (1993). In this effort, we look to the plain and ordinary meaning of words in their context, *Gelinas v. Metropolitan Prop. & Liability Ins. Co.*, 131 N.H. 154, 171, 551 A.2d 962, 972 (1988), and construe the terms of the policy "as would a reasonable person in the position of the insured based on more than a casual reading of the policy as a whole." *Niedzielski v. St. Paul Fire & Marine Ins. Co.*, 134 N.H. 141, 146, 589 A.2d 130, 133 (1991) (quotations omitted). If such a reading reveals an ambiguity in the policy, that ambiguity will be construed against the drafting insurance company. *Trombly v. Blue Cross/Blue Shield*, 120 N.H. 764, 771, 423 A.2d 980, 984 (1980). Application of these principles will generally authorize stacking unless the policy prohibits it through clear and unambiguous policy language. *Cacavas v. Maine Bonding & Casualty Co.*, 128 N.H. 204, 207, 512 A.2d 423, 425 (1986).

The provisions of the Concord General policy that are pertinent to the stacking issue appear in part IV of the body of the policy and in the "New Hampshire Statutory Motor Vehicle Liability Endorsement" (statutory endorsement). The policy promises to pay the insured "all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an *un*insured automobile." (Emphasis added.) The policy provides that the term "*un*insured automobile" includes *under*insured motor vehicles. Paragraph 5(d) of the statutory endorsement in turn provides:

"'[*U*]*nder*insured motor vehicle' means a motor vehicle with respect to the ownership, maintenance, or use of which the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than *the sum of the applicable limits of bodily injury liability under this and any other similar insurance available to the insured.*"

(Emphasis added.) The policy's anti-stacking language appears in paragraph 5(f) of the statutory endorsement:

"The limit of liability for uninsured motorists coverage stated in the Declarations as applicable to 'each person' is

the limit of the company's liability for all damages . . . . This is the most we will pay regardless of the number of . . . automobiles or premiums shown in the Declarations . . . ."

The Mitchells' argument that the Concord General policy permits intra-policy stacking is predicated on a distinction between *un*insured motorist coverage and *under*insured motorist coverage. The Mitchells concede that the policy—specifically paragraph 5(f)—effectively precludes stacking of *un*insured motorist coverage, but they argue that the same is not true of *under*insured motorist coverage. This argument is based on the emphasized language in paragraph 5(d), which requires the insured to compare the coverage on the tortfeasor's vehicle with "the *sum* of the applicable limits of bodily injury liability under this and any other similar insurance available to the insured" (emphasis added) in order to determine whether the tortfeasor's vehicle is *under*insured. The Mitchells insist that this language "commands" intra-policy stacking. In support of this argument, they point out that this language is not found in the standard Insurance Services Organization policy, which instead requires comparison of the tortfeasor's coverage limits to "the applicable limits of liability under this insurance."

 We agree with the Mitchells that the emphasized part of paragraph 5(d)—particularly use of the word "sum"—envisions the possibility of some type of stacking, but we hold that such possibility is limited to *inter*-policy stacking. Under the emphasized part of paragraph 5(d), the items that are to be "summed" are (1) the "applicable limits of bodily injury liability under [the Concord General policy]" and (2) "[the applicable limits under] any other similar insurance available to the insured." In other words, the insured must first determine his "applicable limits" under the Concord General policy and his "applicable limits" under other policies; only after these determinations are made are the two "summed." Paragraph 5(d) offers no guidance, however, with respect to the first step of determining the "applicable limits" under the Concord General policy. That determination is controlled by the rule that intra-policy stacking is permitted unless clearly and unambiguously precluded. *Cacavas*, 128 N.H. at 207, 512 A.2d at 425. Because paragraph 5(f) is substantially similar to the policy language in *Gelinas*, 131 N.H. 154, 623 A.2d 746, that we found to preclude intra-policy stacking, we hold that paragraph 5(d) effectively precludes such stacking. Thus, the "applicable limit" under the Concord General policy is only $100,000.

In *Gelinas*, we held that the intra-policy stacking of uninsured coverage was effectively precluded by use of the following language:

> "'Regardless of the number of . . . automobiles or trailers to which this policy applies, METROPOLITAN's liability is limited as follows:
>
> . . . .
>
> The limit for Protection Against Uninsured Motorist Coverage stated in the Declarations as applicable to each person is the limit of METROPOLITAN's liability for all damages, arising out of bodily injury sustained by one person in any one accident . . . .'"

*Gelinas*, 131 N.H. at 171, 551 A.2d at 972 (emphasis omitted). Although paragraph 5(f) of the Concord General policy is organized differently than the policy language in *Gelinas*, we hold that it is indistinguishable in terms of substance or clarity. Accordingly, paragraph 5(f) clearly precludes intra-policy stacking of uninsured coverage. Our final question, though, is whether it also precludes intra-policy stacking of *under*insured coverage. We hold that it does. By its terms, the limitations of liability provisions of paragraph 5(f) apply to "uninsured" coverage; however, paragraph 5(c) provides that the term "uninsured" includes "underinsured." Accordingly, the antistacking provisions of paragraph 5(f) equally are applicable to underinsured coverage by way of paragraph 5(c).

The Mitchells next argue that even if stacking is precluded, Concord General should not be entitled to "offset" its $100,000 of underinsured motorist coverage with the full $100,000 paid by Peerless on behalf of Bennett's estate. The Mitchells argue that Concord General may apply as an offset only that portion of the $100,000 allocated to Stephan's estate. This argument is based primarily on the language of paragraph 5(f)(c) of the statutory endorsement, which provides:

> "With respect to an accident involving an underinsured motor vehicle, the limit of liability for this coverage shall be reduced by all sums paid *on account of such bodily injury* by or on behalf of . . . the owner or operator of the underinsured automobile . . . ."

The Mitchells argue, *inter alia*, that those sums allocated to them in their individual capacities were not "on account of . . . bodily injury," and thus are not available to Concord General as an offset. Because we hold that the Bennett automobile was not "underinsured," however, we do not reach this issue.

■ The Concord General policy explicitly provides coverage for sums that the insured is entitled to recover from the operator of an "*un*insured" automobile. Coverage for the liability of an *underin*sured motorist exists solely because paragraph 5(c) of the statutory endorsement defines "uninsured" to include "underinsured." *See Amica Mut. Ins. Co. v. Morrison*, 130 N.H. 250, 255, 536 A.2d 199, 202 (1987). In turn, paragraph 5(d), quoted again here, provides that an automobile is "underinsured" only if

> "with respect to the ownership, maintenance, or use of [the vehicle] the sum of the limits of liability under all bodily injury liability bonds and insurance policies *applicable at the time of the accident* is *less* than the sum of the applicable limits of bodily injury liability under this and any other similar insurance available to the insured."

(Emphasis added.) In essence, this definition requires a comparison of the tortfeasor's total liability coverage with the insured's total underinsured coverage. This is a comparison of policy limits as they existed "at the time of the accident"; it is not a comparison of the underinsured coverage with that sum actually received at some later point from the tortfeasor's liability carrier. In this case, the $100,000 coverage on the Bennett automobile by virtue of the Peerless policy was not *less* than the underinsured coverage available to Stephan's estate. Accordingly, the Bennett automobile was not "underinsured" within the meaning of the Concord General policy, and thus, under these facts, the Mitchells are not entitled to underinsured coverage.

*Affirmed.*

All concurred.