Hillsborough-northern judicial district
No. 97-272

### Allstate Insurance Co.

v.

### Janeen Armstrong & a.

September 2, 1999

*Wiggin & Nourie, P.A.*, of Manchester (*Gordon A. Rehnborg, Jr.* and *Gail E. Bakis* on the brief, and *Mr. Rehnborg* orally), for the plaintiff.

*Devine, Millimet & Branch, P.A.*, of Manchester (*Andrew D. Dunn* and *Ovide M. Lamontagne* on the defendants' joint brief, and *Mr. Dunn* orally), for defendants Janeen and Ruth Armstrong.

*Scotch & Zalinsky*, of Manchester (*Barry M. Scotch* on the defendants' joint brief), for defendant Gary Sefton.

THAYER, J. The plaintiff, Allstate Insurance Co., petitioned the trial court to determine the extent of uninsured motorist coverage available to the defendants, Janeen Armstrong, Ruth Armstrong, and Gary Sefton. The defendants appeal the Superior Court's (*Groff,* J.) order declaring that they are not entitled to uninsured motorist coverage. We affirm.

The defendants and a child were the occupants of an automobile owned by defendant Janeen Armstrong and operated by defendant Sefton. The automobile was struck from the rear by an automobile operated by Aimee Nadeau. Nadeau was legally at fault in causing the accident. The defendants were all injured and the child died as a result of the accident.

Nadeau had liability insurance coverage under a policy issued by Prudential Insurance Company (Prudential) with limits of liability in the amount of $25,000 per person and $50,000 per occurrence. Defendant Janeen Armstrong's vehicle was insured under a policy issued by the plaintiff, providing uninsured motorist coverage with limits of liability in the amount of $25,000 per person and $50,000 per occurrence. With the plaintiff's consent, Prudential paid its entire policy limit of $50,000. The child's estate received $25,000. The remaining $25,000 was distributed among the defendants in the following amounts: Janeen Armstrong received $15,000; Ruth Armstrong received $4,000; and Sefton received $6,000. In addition, the child's estate made a negligence claim against defendants Sefton and Janeen Armstrong. The plaintiff settled that claim paying $25,000 under the liability coverage provision.

The plaintiff denied any obligation to provide coverage for an additional claim by the defendants under the uninsured motorist coverage provision and filed a declaratory judgment petition. In interpreting the uninsured motorist provision, the trial court determined that because the policy limits of the tortfeasor's liability

policy and the uninsured motorist coverage are the same, the defendants are not entitled to coverage. The trial court further determined that the policy's provisions do not fail to provide coverage as mandated by statute. On appeal, the defendants argue that the trial court erred in interpreting both the policy's uninsured motorist provision and the applicable statutory law.

■ We begin by examining the policy language. "Like all contracts, the interpretation of insurance policy language is ultimately an issue of law for this court to decide." *Brouillard v. Prudential Prop. & Cas. Ins. Co.*, 141 N.H. 710, 712, 693 A.2d 63, 65 (1997) (quotation and brackets omitted). We look to the plain and ordinary meaning of the policy's words in context, *Concord Gen. Mut. Ins. Co. v. Mitchell*, 138 N.H. 229, 231, 637 A.2d 903, 904 (1994), and "construe the terms of the policy as would a reasonable person in the position of the insured based on more than a casual reading of the policy as a whole," *Deyette v. Liberty Mut. Ins. Co.*, 142 N.H. 560, 561, 703 A.2d 661, 662 (1997) (quotation omitted). Thus, "[w]e will enforce a policy provision that limits the insurance company's liability when the policy language is clear and unambiguous." *Id.*

■ The uninsured motorist provision provides: "[The plaintiff] will pay damages for bodily injury . . . which an insured person is legally entitled to recover from the owner or operator of an uninsured auto." The policy defines an "uninsured auto" in part as "an underinsured motor vehicle which has liability protection in effect and applicable at the time of the accident, but in an amount less than the applicable limit of liability for this coverage." We interpreted similar language in *Concord General*, 138 N.H. at 234, 637 A.2d at 906, and concluded that "this definition requires a comparison of the tortfeasor's total liability coverage with the insured's total underinsured coverage." *Id.* We further explained that "[t]his is a comparison of policy limits as they existed 'at the time of the accident'; it is not a comparison of the underinsured coverage with that sum actually received at some later point from the tortfeasor's liability carrier." *Id.* Therefore, the Nadeau automobile was not "underinsured" within the meaning of the plaintiff's policy, and thus the policy does not provide the defendants with uninsured coverage. Because "[t]he parties to an insurance contract may not by agreement limit the required coverage in contravention of the Financial Responsibility Law," *Universal Underwriters Ins. Co. v. Allstate Ins. Co.*, 134 N.H. 315, 318, 592 A.2d 515, 517 (1991) (quotation and brackets omitted); *see* RSA ch. 264 (1993 & Supp.

1998), we next consider whether the policy fails to provide sufficient liability coverage as mandated by statute.

"In matters of statutory interpretation, this court is the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole." *Gisonni v. State Farm Mut. Auto. Ins. Co.*, 141 N.H. 518, 519, 687 A.2d 709, 709 (1996) (quotation omitted). "We look first to the statutory language itself," *Brewster Academy v. Town of Wolfeboro,* 142 N.H. 382, 383, 701 A.2d 1240, 1241 (1997) (quotation omitted), and unless they are defined within the statutory scheme, we ascribe the plain and ordinary meanings to the words used. *State v. Woods*, 139 N.H. 399, 400, 654 A.2d 960, 961 (1995).

RSA 264:15, I (1993) provides in part:

No policy shall be issued . . . in this state unless the coverage is provided . . . at least in amounts or limits prescribed [in RSA 259:61] . . . . When an insured elects to purchase liability insurance in an amount greater than the minimum coverage required by RSA 259:61, his uninsured motorist coverage shall automatically be equal to the liability coverage elected.

The minimum coverage required by RSA 259:61 (1993) is "at least $25,000 on account of injury to or death of any one person, and subject to such limit as respects injury or death of one person, [and] at least $50,000 on account of any one accident resulting in injury to or death of more than one person." RSA 259:117 (1993) in part defines "uninsured motor vehicle" as "an insured motor vehicle if and to the extent that, at the time of the subject accident, the limits of liability insurance carried as to such motor vehicle are lower than the minimum limits applicable to motor vehicle liability insurance policies issued pursuant to the laws of New Hampshire."

The defendants argue that the net result of this statutory scheme is that a tortfeasor's vehicle is considered "uninsured" whenever the coverage available for each victim does not meet both the $25,000 per person and $50,000 per occurrence requirements. We will not interpret the statute to lead to such an unreasonable result, *cf. Appeal of HCA Parkland Medical Ctr.*, 143 N.H. 92, 95, 719 A.2d 619, 622 (1998), that effectively nullifies the per occurrence limitation. The plain language of the statute taken as a whole provides that any recovery arising from the injury or death of one person is subject to the $25,000 limit. *Cf. N.H. Insurance Co. v. Bisson*, 122 N.H. 747, 748, 449 A.2d 1226, 1227 (1982) (holding policy

limit for bodily injury to one person includes consequential loss of consortium claim). Moreover, the defendants' interpretation renders the $50,000 per occurrence limit mere surplusage. *See Merrill v. Great Bay Disposal Serv.*, 125 N.H. 540, 543, 484 A.2d 1101, 1103 (1984) (all words of statute must be given effect; legislature not presumed to use superfluous words). If the legislature's intent was to guarantee each person a minimum of $25,000 coverage regardless of the number of victims in any one accident, the per accident limit is a nullity. The tortfeasor's policy in this case provided $25,000 per person and $50,000 per occurrence coverage; therefore, the policy met the statutory minimum.

■ The defendants contend that *American Mutual Insurance Co. v. Commercial Union Insurance Co.*, 116 N.H. 210, 357 A.2d 873 (1976), controls the result in this case. In *American Mutual*, we looked to the amount actually paid to each claimant for the damages suffered and relied on *Raitt v. National Grange Mutual Insurance Co.*, 111 N.H. 397, 285 A.2d 799 (1971), and *Gay v. Preferred Risk Mutual Insurance Co.*, 114 N.H. 11, 314 A.2d 644 (1974), to conclude that "[a]n insured tort-feasor is to be considered as uninsured for the purposes of the statute to the extent that the amount available from the tort-feasor's insurer to any one injured person is less than the minimum coverage required by our financial responsibility law." *American Mutual*, 116 N.H. at 215, 357 A.2d at 877. The claimants in *Raitt* and *Gay* looked to multiple tortfeasors for compensation and the issue was whether the claimants could make an uninsured motorist claim where at least one of the tortfeasors was uninsured. *See Raitt*, 111 N.H. at 397-98, 285 A.2d at 800; *Gay*, 114 N.H. at 13, 314 A.2d at 645. Hence, the issue in *Raitt* and *Gay* is inapposite to the issue in both this case and *American Mutual* where multiple claimants look to a single tortfeasor, who at the time of the accident was insured to the minimum allowed by statute and whose coverage equaled the insured's. *American Mutual*, 116 N.H. at 215, 357 A.2d at 874-75. Moreover, following *American Mutual*, and for more than two decades,

> our inquiry in determining the extent of coverage to which an insured [is] entitled under the uninsured motorist statute [has] no longer focused exclusively on whether the tortfeasor was insured in the minimum amount required by New Hampshire law. Rather, we determine[] the extent of coverage by ascertaining the amount of uninsured motorist coverage the insured [has] purchased.

*Descoteaux v. Liberty Mut. Ins. Co.*, 125 N.H. 38, 44, 480 A.2d 14, 19 (1984); *see also Vigneault v. Travelers Ins. Co.,* 118 N.H. 75, 79-80, 382 A.2d 910, 914 (1978). "In cases involving only a single uninsured motorist tortfeasor, we have held that an insurer is liable on its uninsured motorist policy for the difference between the amount of the insured's damages or the coverage, whichever is the lesser, and the tort-feasor's liability coverage." *Deyette*, 142 N.H. at 562-63, 703 A.2d at 663 (quotation and brackets omitted). We cannot reconcile the result in *American Mutual* with both the plain meaning of the statute and our longstanding application of the standard repeated in *Deyette*. Therefore, to the extent *American Mutual* is inconsistent with our holding today, *American Mutual* is overruled. Further, in light of our holding, we need not address the parties' remaining arguments.

*Affirmed.*

All concurred.