Harrison v. Allstate                    CV-98-602-JM  11/08/99  P

**UNITED STATES DISTRICT COURT FOR THE**
**DISTRICT OF NEW HAMPSHIRE**


Patrick Harrison
Kim Hanscom

      v.                                    Civil No. 98-602-JM

Allstate Insurance Company



**O R D E R**

In this civil action, plaintiffs Patrick Harrison and Kim

Hanscom seek a declaratory judgment pursuant to New Hampshire

Revised Statutes Annotated (RSA) 491:22.  They allege that

defendant Allstate Insurance Company is obligated to provide

underinsured motorist benefits to them under the uninsured-

underinsured motorist (UIM) provisions of Harrison's automobile

insurance policy issued by Allstate.[1]  Jurisdiction of the action

is properly founded upon RSA 491:22-c (Supp. 1998)[2] and diversity

---

[1]Originally filed in Rockingham County Superior Court, this
action was removed by defendant to this court pursuant to 28
U.S.C. § 1441(a).


[2]RSA 491:22-c provides that

> [t]he remedy of declaratory judgment
> to determine the coverage of a liability
> insurance policy under RSA 491:22, 22-a, and
> 22-b shall also be available in the United
> States district court for the district of New
> Hampshire when that court may properly

jurisdiction under 28 U.S.C. § 1332(a)(1), the parties being residents of different states.

Presently before the court is Allstate's motion for summary judgment premised upon its contention that the above-mentioned coverage does not extend to the plaintiffs under the terms of the policy.  Plaintiffs object to said motion.[3]

<u>Background</u>

On August 6, 1997, Harrison and Hanscom were riding one of Harrison's motorcycles when they were struck by another vehicle. As a result of the accident, Harrison and Hanscom were both severely injured and hospitalized.  Because the operator of the other vehicle was at fault, that operator's insurance carrier paid $100,000, the full limit of liability coverage, to each plaintiff.

At the time of the accident, the motorcycle that Harrison was operating was one of three motorcycles he had insured under the terms of a New Hampshire automobile insurance policy issued

adjudicate the matter under the laws of the
United States.


[3]Defendant has filed a response which the court will also consider with this motion.

by Allstate.[4]  To maintain liability coverage Harrison paid separate premiums for each of the insured motorcycles.  With respect to UIM coverage under Harrison's policy, Harrison paid only one premium for all three motorcycles.

The UIM provision within the policy provides coverage of $50,000 per person for bodily injury if Harrison, while operating one of the insured motorcycles, is involved in an accident with another vehicle that was either uninsured or underinsured.[5] Harrison's policy also includes a provision which provides that the insured is limited to the UIM coverage limits on the declaration page.  This provision also specifically prohibits the insured from "stacking" the UIM coverage limit by multiplying the UIM coverage limit on the declaration page by the number of automobiles insured under the policy.

_____

[4]The documents included as part of the policy are as follows: New Hampshire Auto Insurance Policy (form AU128), Motorcycle/Misc Endorsement (form AU1330), Amendment of Policy Provisions (form AU2312), Amendatory Endorsement (form AU1147), and Policy Amendment Endorsement (form AU2014-2).

[5]To be considered an underinsured vehicle, the third party's vehicle must provide less liability coverage than the insured's UIM coverage.

3

<u>Discussion</u>

1.   <u>Standard of Review</u>

The court may only grant a motion for summary judgment where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  Accordingly, at this stage of the proceeding, the court does not weigh the evidence and determine the truth of the matter but instead determines whether there is a genuine issue of fact for trial.  <u>See</u> <u>Stone & Michaud Ins. Bank Five for Savings</u>, 785 F. Supp. 1065, 1068 (D.N.H. 1992) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986)).

In this case, although the parties disagree as to the interpretation of the insurance policy, particularly the terms relating to UIM benefits, the central facts of the case are undisputed.  The court's interpretation of an insurance policy is governed by principles of state contract law.  <u>See</u> <u>LaSorsa v. UNUM Life Ins. Co.</u>, 955 F.2d 140, 147 (1st Cir. 1991).  In New Hampshire, the interpretation of insurance policy language is ultimately a question of law for the court to decide.  <u>See</u> <u>Concord Gen. Mut. Ins. Co. v. Mitchell</u>, 138 N.H. 229, 231, 637 A.2d 903, 904 (1994); <u>LaSorsa</u>, 955 F.2d at 147.  Accordingly,

4

defendant should be granted a summary judgment if it is so entitled as a matter of law. <u>See e.g.</u>, <u>Atlas Pallet, Inc. v. Gallagher</u>, 725 F.2d 131, 134 (1st Cir. 1984) ("where the facts upon which liability is claimed or denied under an insurance policy are undisputed and the existence or amount of liability depends solely upon a construction of the policy, the question presented is one of law for the court to decide.").

## 2. Underinsured Motorist Coverage

Although plaintiffs concede that Harrison's policy contains an UIM provision which prohibits stacking of UIM coverage, they assert that it is unclear under the UIM anti-stacking provision whether they are precluded from stacking motorcycles in particular. Thus, the ambiguity of this provision should be construed in their favor so that they may stack the UIM coverage limit of Harrison's three, insured motorcycles. Because Harrison and Hanscom only received $100,000 from the third party's carrier, they assert that Allstate must pay them each the difference between the stacked uninsured amount and the amount paid by the third party's carrier which would be $50,000.[6]

Defendant asserts that the UIM anti-stacking provision is

---

[6]By stacking the UIM coverage limit of $50,000 per person by the three motorcycles, instead of $50,000 per person, plaintiffs' total UIM coverage limit would be $150,000 per person.

5

not ambiguous and clearly prevents plaintiffs from stacking the UIM coverage limit of the three motorcycles insured under the policy. In support of this position, defendant points out that the policy issued to Harrison for liability, property and UIM insurance involved only motorcycles. Thus, all of the provisions relating to automobiles within Harrison's policy must apply to Harrison's motorcycles. In addition, several provisions within the policy, including the Miscellaneous Vehicle Endorsement and the UIM Endorsement, define an auto, not as a four-wheel private passenger auto, but as a motor vehicle which would include motorcycles. Finally, read in its complete context, the policy clearly prohibits the insured from stacking UIM coverage of the insured motorcycles. As a result, with an UIM coverage limit of $50,000 per person, there is no "underinsured" amount which would allow plaintiffs UIM benefits.

Intra-policy stacking of underinsured motorist coverage may be precluded by an anti-stacking provision within the policy if the UIM anti-stacking provision is clear and unambiguous. See Mitchell, 138 N.H. at 231, 637 A.2d at 904. According to the policy provisions, as plaintiffs concede, there is no question that Harrison's policy limits UIM coverage. The policy declaration page lists UIM coverage as $50,000 per person and $100,000 per accident. The policy also contains an Important

6

Notice[7] which explains when UIM benefits will be provided to the insured.  Within this notice a clause specifically provides that:

> [u]nlike most other policy coverages, only one premium is charged for all autos covered by Uninsured Motorists Bodily Insurance.  The Uninsured Motorists Bodily Injury Insurance limits which are stated on your Policy Declarations are the most that you can recover for bodily injury in any one covered accident which is caused by an uninsured motorist.

Finally, the UIM Endorsement within Harrison's policy which amends the terms of UIM coverage specifically limits UIM liability with a "Limit of Liability" clause which states:

> THE UNINSURED MOTORISTS INSURANCE FOR BODILY INJURY LIMIT STATED ON THE DECLARATIONS PAGE IS THE MAXIMUM AMOUNT PAYABLE FOR THIS COVERAGE BY THIS POLICY FOR ANY ONE ACCIDENT REGARDLESS OF THE NUMBER OF **AUTOS YOU** OWN OR INSURE WITH **US**.  THIS MEANS THE INSURING OF MORE THAN ONE **AUTO** FOR OTHER COVERAGES WILL NOT INCREASE **OUR** LIMIT OF LIABILITY BEYOND THE AMOUNT SHOWN IN THE DECLARATIONS.

Thus, the key issue in this case is whether the term automobile clearly applies to motorcycles in the UIM anti-stacking provision within Harrison's policy.  To interpret terms within an insurance policy the court looks to the "plain and ordinary meaning of words in their context and construe[s] the

---

[7]This notice provides that UIM benefits will be paid to the insured and others covered by the insured's policy for bodily injury in an accident caused by a liable operator of an uninsured auto which includes "an underinsured motor vehicle which has liability coverage in effect at the time of the accident, but in an amount less than your Uninsured Motorists Bodily Injury Insurance limits."

terms of the policy as would a reasonable person in the position of the insured based on more than a casual reading of the policy as a whole." Mitchell, 138 N.H. at 231, 637 A.2d at 904 (quotations omitted); see also M. Mooney Corp. v. United States Fidelity & Guaranty Company, 136 N.H. 463, 470, 618 A.2d 793, 797 (1992). If the plain and ordinary reading reveals an ambiguity in the policy, that ambiguity will be construed in favor of the insured. See id. However, the mere existence of a dispute between the parties over the scope of coverage under a policy does not mean that the contract is ambiguous. See LaSorsa, 955 F.2d at 147-48. In addition, where the insurance contract contains special definitions in the policy, those definitions will control. See Vaillancourt v. Concord General Mutual Insurance Company, 117 N.H. 48, 49, 369 A.2d 208, 209 (1977)(where insurance policy defined automobile as "a land motor vehicle, trailer or semi-trailer" snowmobile would be included in that definition). Thus, the court will consider the definitions within Harrison's policy, relevant to the term automobile, and determine "what meaning a reasonable person in the position of the insured would give to [those] words." Id.

As Allstate points out, because the insured auto was "a vehicle other than a four wheel private passenger auto or utility auto," the Miscellaneous Vehicle Endorsement applied to the terms

8

of Harrison's policy. This particular endorsement defined auto as "a land motor vehicle designed for use on public roads" and specifically provided that in regards to UIM benefits "the term motor vehicle replaces the term auto." Thus, within the limited liability clause of the UIM Endorsement, the term auto would be replaced with the term motor vehicle. In addition, within the UIM Endorsement[8] itself, an "insured auto" is defined as a motor vehicle that the insured owns including any "auto you purchase as a replacement for the owned motor vehicle." The UIM endorsement then defines motor vehicle as "a land motor vehicle or trailer ... "

Plaintiffs rely heavily upon <u>Boucher v. Employers Mutual Casualty Company</u>, for the proposition that a motorcycle is not an automobile. In <u>Boucher v. Employers Mutual Casualty Company</u>, plaintiff while operating his uninsured motorcycle was injured by a third party in an uninsured vehicle. <u>See</u> <u>Boucher v. Employers Mutual Casualty Company</u>, 121 N.H. 524, 431 A.2d 137 (1981).

---

[8]The first paragraph of the UIM Endorsement provides that "**[w]e** will pay those damages that an insured person is legally entitled to recover from the owner or operator of an uninsured **auto** because of **bodily injury** sustained by an insured person. The **bodily injury** must be caused by accident and arise out of the ownership, maintenance or use of an uninsured **auto**." The court is unpersuaded by plaintiffs' assertion that the use of various bold type print within this paragraph create ambiguity as to the meaning of the term automobile.

Because plaintiff had insured another vehicle with the defendant which provided UIM coverage, plaintiff claimed that he was entitled to UIM benefits.  See id.  The insurer, on the other hand, denied plaintiff UIM benefits because an exclusionary clause within the policy provided that UIM coverage would not apply "to bodily injury to an insured while occupying an automobile (other than the insured automobile) owned by the named insured ..."  Boucher, 121 N.H. at 525, 431 A.2d at 138.  The insured's policy did not specifically define "automobile" but did define a "private passenger automobile" as "a four-wheel private passenger, station wagon or jeep type automobile."  Considering the policy's use of the word automobile and the common meaning of the word automobile, the court determined that the UIM exclusionary clause was "reasonably susceptible to different interpretations: (1) "automobile" is limited to four-wheel vehicles, and the plaintiff is insured; or (2) "automobile" includes motorcycles, and the plaintiff is not insured."  Boucher, 121 N.H. at 526, 431 A.2d at 138.  Because of this ambiguity, the court construed the policy in the insured's favor so that motorcycles were not included within the term automobile.  See id.

Unlike the policy in Boucher, the language in Harrison's policy does not imply that automobiles are limited to four-wheel

10

vehicles.  Throughout Harrison's policy, the terms auto and motor vehicle are interchangeable and defined, not as four-wheel passenger vehicles, but as "land motor vehicle[s]."  In addition, consistent with the common and statutory meaning of the term motor vehicle, the policy does not limit the use of the term motor vehicle to four-wheel vehicles.  See e.g., Webster's Third New International Dictionary (1981)(motor vehicle is defined as "an automotive vehicle not operated on rails, (especially) one with rubber tires for use on highways" and automotive is defined as relating to "vehicles or machines that propel themselves (as automobiles, trucks, airplanes, motorboats).");  R.S.A. § 259:60 (Supp. 1998)(motor vehicle is defined as "any self-propelled vehicle not operated exclusively on stationary tracks, including ski area vehicles.").  Considering (1) the definitions within Harrison's policy which define automobiles as land motor vehicles, (2) the use of the terms auto and motor vehicle within the policy, (3) the common meaning of the term motor vehicle, and (4) the fact that the policy only insured motorcycles, it is clear that the UIM anti-stacking provision within Harrison's policy applied to motorcycles.  Unlike other cases where anti-stacking provisions have been ambiguous, see e.g., Cacavas v. Maine Bonding and Casualty Company, 128 N.H. 204, 207, 512 A.2d 423, 425 (1986)(the insured "could reasonably interpret the

policy to mean that liability was not limited to the amount declared for only one vehicle ..."), the anti-stacking terms within Harrison's policy are not ambiguous.  C.f., Mitchell, 138 N.H. at 233, 637 A.2d at 905; United Services Automobile Association v. Wilkinson, 132 N.H. 439, 445, 569 A.2d 749, 752 (1990); Gelinas v. Metropolitan Property & Liability Insurance Co., 131 N.H. 154, 172, 551 A.2d 962, 973 (1988).  Thus, the policy clearly indicates that UIM coverage is limited to $50,000 per person for bodily injury and that Harrison and Hanscom cannot stack coverage by multiplying this amount by the number of motorcycles insured under the policy.

CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment (document 13) is granted.

**SO ORDERED.**

_____
James R. Muirhead
United States Magistrate Judge

Date:   November 8, 1999

cc:     Peter M. Solomon, Esq.
        Charles Platto, Esq.

12